a.k.a. Goon Appellant, Ms. Davis for Appellant Boston, Ms. Pembroke for Appellant Brown, Ms. Kittay for Appellant O'Donohue, Mr. Zucker for Appellant Matthew, and Mr. Ewing for the government. Ms. Davis. Good morning. I plead the court. We raise a single issue on appeal, and that is whether there is sufficient evidence to convict Mr. Boston on the single count of possession with intent to distribute PCT. The judge, as I'm sure the court is aware, granted NJ-08 on the conspiracy count and the possession of body armor count. The jury convicted him on the single count of possession with intent to distribute and acquitted him on all the other firearm violations. Our main argument is that near presence or proximity to the drugs is insufficient to convict Mr. Boston. The government cited five reasons to demonstrate what they believe is more than near proximity. One is that Mr. Boston was not just a casual visitor. Second, that he was engaged in PCT distribution. Third, that a battering ram was used, and after the officers entered, there was the smell of PCT and the toilet was running. There was physical evidence recovered, and the government names all the vials and the firearms and everything else that was found. There were drugs found, and there were photos on Mr. Boston's phone. And finally, there was a fingerprint on an empty bottle that did at one point contain PCT. In regard to the first argument, we submit that even though Mr. Boston was not a casual visitor, that does not weigh in the government's favor because a number of other people were coming to that apartment and they were storing their drugs there. So just because Mr. Boston may have stayed there at times, that is not sufficient to hold him accountable for the drugs that were there. Secondly, although Mr. Boston was involved in PCT distribution, the testimony was that he distributed outside the apartment, not inside it. And also, according to this circuit case in Dorman, doing drug business is not sufficient to hold a person accountable for drugs that are found within a premise. In regard to the smell of the PCT, there's no evidence at trial how long the smell of PCT lingers, but I think it's fair knowledge that the smell of PCT lasts for a very long time. Furthermore, there's no evidence that no one else was in the apartment prior to the police entering because, again, they did use a battering ram to enter. And so there was no evidence that there was no one else in there that may have left before the police entered the apartment. I think the important point here is that everything that was found in this regard to evidence, none of it was in plain view, all of it was hidden. Some was found in a closet, some was found in a trash can. There was nothing out there for the jury to infer that Mr. Boston had to have known that these drugs were there. And finally, as far as the guns go, again, the jury acquitted Mr. Boston of all the gun counts. And finally, the fingerprints, that's the hardest one to get around, but again, there's no evidence when the fingerprint was placed there. And I think the Lucas decision rejected the argument that fingerprints alone constitute constructive possession of the PCP. Can I ask you, for PCP, is there a certain amount that's considered, if it's found to be a certain amount, that's recognized to be a distribution level amount or below a certain amount, or does it generally seem to be a personal use amount? I don't know the answer to that question. I'm guessing, I think the vials that were found were, I believe, half-ounce vials. But it was a one-ounce vial. That was clearly considered a distribution amount. There's no dispute that that one-ounce vial is a distribution amount vial. Excuse me? There's no dispute that that one-ounce vial is a distribution amount vial. We don't. And I think what the evidence was that they were dipping cigarettes or something into PCP vials and selling those. I don't think they were selling the vials directly. Questions? No questions. Okay, thank you. Ms. Pembroke? As I understand the arrangement, we're going to hear from each of the defense counsel first and then consolidated response from the government. Good morning, Your Honors. I'm Christine Pembroke. I represent Appellant Brown. In this matter, we have raised a challenge to the three jury instructions for the offenses upon which the appellant was convicted, namely armed burglary with respect to Clifton's apartment, possession with the intent to distribute PCP, and unlawful possession of a firearm with a prior offense. The government maintains that those challenges are subject to plain error review, and I would like to begin by focusing on the harm of the error. Harm exists where there is a reasonable possibility that the outcome would have been different but to the instructional error. And that happens where the government's evidence is not overwhelming. The harm in this case can be best put into perspective by appreciating the logical implications of the facts and the jury's decisions in this case. Notably, although Clifton testified that Mr. Brown, while showing Clifton that he was carrying a gun, forced him to have a key made to his apartment. And that Mr. Brown and Mr. Matthews used Clifton's apartment against Clifton's will to distribute PCP, there was evidence that Clifton was living beyond his means and was providing drugs to others. The jury, signaling that they discredited Clifton, acquitted Mr. Brown on the four counts related to Mr. Brown's supposedly forcing Clifton to provide him with a key to the apartment. And they acquitted Mr. Brown of conspiring with Mr. Matthews to distribute the PCP in Clifton's apartment. In addition, the jury was unable to reach a verdict on the charge of carrying a firearm during a drug trafficking offense. Obviously, the government's evidence in this case was not overwhelming. All of this suggests that one or more jurors believe that the drugs and guns found in Clifton's apartment were Clifton's. That likely juror view renders the harm in informing the jury of Mr. Brown's prior conviction for unlawful possession of a firearm significant. Just as the D.C. Court of Appeals found in Eadie, the disclosure satisfies the prejudice showing of the plain error review because it strains the understanding of human nature to believe that the jury would have been able to assess the felon's defense objectively after being told of the prior conviction. Do you think the question is plain error or waiver with respect to this trial? Our response on the waiver issue is that because the trial judge was made aware on a number of occasions of the issue and ruled on the issue, the issue is preserved. Well, the defendant knowingly waived whatever right he had by absolutely insisting that the stipulation be read. We have cases that stand for the proposition that when the defense sets up the issue, puts the issue, you know, insists on the issue, etc., that that's waiver. Why isn't this a waiver? It seems extremely... The defense said, if you don't do it, we're going to do it. So, it doesn't really seem like it's a plain error question. It seems like it's a waiver question. Well, I would have to argue that if the judge is made aware of a situation that is highly prejudicial to the defendant, he has an obligation to address that situation and not just agree to what the defense counsel is doing to the detriment of his client. Well, have you claimed that the defense counsel was ineffective? Have you made an ineffective assistance claim? I haven't made a claim at this point, Your Honor. Well, then, maybe there's a strategy here that all the rest of us are not able to figure out, but nonetheless, there's a strategy in what the defense attorney was doing. Maybe he thought the evidence was going to come out anyway, and he was going to take the stain out of it. That would be a monetary waiver. Well, at the end of the trial, the evidence hadn't come out anyway when the instruction was being discussed. So, I don't know what his strategy would have been at that point. I don't know either. But maybe I'm surprised that there's not being an ineffective assistance claim, which normally there would be at this point if he thought it was ineffective. I mean, that is always something we could consider. I'm not suggesting that you raise one of them. That's not what I mean by that. But, I mean, in the absence of one, it's hard for us to decide that this isn't just a voluntary waiver. Go ahead. I don't mean to use up all your time. Likewise, the conclusion that one or more jurors believe that the drugs in Clifton's apartment were Clifton's supports the likely juror finding that Mr. Brown was not possessing with the intent to distribute the PCP in Clifton's apartment. And the further conclusion that such juror convicted Mr. Brown of quiz based on some other quantity and another incident of alleged PCP distribution. This underscores that the lack of unanimity instruction on the quiz count was indeed prejudicial. Finally, the failure to instruct the jury properly on the burglary count was prejudicial because that failure presents the risk that a juror convicted Mr. Brown of burglary based on a literal language of the instruction. And that the juror need only find Mr. Brown entered the apartment with the intent to store any weapons, including illegal ones. Well, it also said narcotics. Yes. He had to find both. And wouldn't that be understood to be illegal narcotics? Well, not necessarily. I mean, there are a host of things that would have to be proven for it to have been illegal possession that would support a crime and his intent to commit a crime when he entered. The jury wasn't instructed that it had to be a controlled substance. The jury wasn't instructed about the quantity that had to be possessed in order to prove that he intended to commit the crime of possession of an illegal substance. What should the instruction have said in your view? In my view, the instruction should have gone through all of the elements of illegal possession and of illegal weapons possession and charged the jury with finding all of those elements as a predicate to proving he had the wrongful intent when he entered the apartment. And the judge didn't do that here. Number two, at the time of the entry, the defendant intended to use Mr. Clifton's apartment as a place to possess and store narcotics and weapons. Narcotics are not necessarily illegal. That was my point. Do you think in the context here it would be, I understand your literal point, but be understood? Well, it certainly wasn't what was required in the jury instructions, but the further fact that the amount that had to be possessed wasn't discussed either, I think goes to the fact that that instruction was inadequate. What amount do you think had to be? It had to be measurable or detectable. Nobody asked for that kind of instruction, did they? That's correct. The statute says you have to intend to commit any criminal offense, right? Yes, but the case law says you have to specify which offense you're intending to commit. Well, the judge did instruct that he had to intend to commit a crime. Right, but you have to specify which crime. And they specified narcotics and weapons, so even if you're right that sometimes narcotics and weapons aren't a crime, in this case the judge instructed that it had to be a crime, right? Right, but he didn't give the jury all the elements of those crimes that they had to agree on unanimously. Have you seen other cases where that's how these types of robberies were instructed, where they actually then went through every element of the crime they're in? I don't know offhand if there are any cases in which the court actually discussed all of them. Have you seen model jury instructions that do it that way? I don't know that the model jury instructions go into that aspect of it. It's the case law that says you have to establish that there was a crime that the defendant was intending to commit. Anything else? Thank you. Good morning. May it please the Court, I'm Barbara Kittay, and I represent Ira Adona. Our issue is one of sentencing. Mr. Adona pleaded guilty to one count of conspiracy, and per the plea agreement, he also pleaded guilty to a Superior Court offense in the Superior Court. Our issue is whether the sentence as imposed counted twice the conduct that was addressed in the Superior Court, both by a sentencing enhancement in the District Court and then by the sentence in the Superior Court, which were imposed consecutively. We object to the sentence for, among other reasons, because the Court actually had given its commitment that it would not impose the sentences consecutively and would not punish the defendant twice for the same conduct. Where is that commitment? There actually is both in the plea hearing, but more specifically in a status hearing that was held before the District Court on July 28, 2015. There was an extensive discussion. Do you have a J.A. site? I saw the District Court committing a lot of times to impose consecutive sentences. Do I have the site to where he commits not to do it? There are several, actually. But most specifically, in the July 28 hearing at page 41, at the conclusion of the entire argument, the Court says, I'll go with it, don't worry. And the defense counsel says, thank you, so we're going to be a 27 for Mr. Adona. I think it's Category 3, which is, I think, 87 to 104. And the Court repeats, I'm sorry, 87 to 108. And the Court repeats 87 to 108. But in addition to that, and I have actually put some of the citations in my opening brief, where he says you have my commitment on that. I'm sorry, I did put them in my opening brief. Perhaps as I rise again for a rebuttal argument, as I sit through the government's argument, I'll give you several, actually there are several citations where the Court said, in fact, then goes into a bit of a monologue where he explains that he should not even tempt and appeal on this issue by sentencing consecutively. And he sort of derisively says, because some appellate guru will come forward who's not as reasonable as trial counsel and will come forward and say it was an error when trial counsel was being reasonable. And this appellate guru, which I assure you I'm not, but this appellate guru would come forward at a later time. And the Court asks it, in open court, why wouldn't it be more reasonable for me to avoid this issue entirely by sentencing this concurrently and not consecutively? The discussion was had at great length. And then there's this extraordinary moment in the sentencing transcript right at the beginning where the Court seems to forget that it had made all of those commitments and says, no, trial counsel would not be so unreasonable as to request such a thing. And it's an extraordinary moment because I think even the government is surprised because the Court had made that very commitment. And indeed, trial counsel was not even asking that the sentence in the district court completely subsumed the conduct because it had been counted as a sentencing enhancement. It was merely asking that it run concurrent that period of time which the sentencing enhancement had imposed to the sentence that the Superior Court had imposed. You're talking about JA 481 or whatever that is called. The commitment, you have my commitment on that? Yes. But I didn't understand you to be making an argument that there was, I assume for the moment that you're correct that's what the commitment was at that point, that the judge couldn't change his mind at the time of the sentencing. I didn't notice that that was your argument. Is that your argument, that the judge misled the defense and they were therefore unprepared for sentencing or something like that? No, I think it's part of the argument because, and I actually found the case that the government submitted on Sunday quite interesting, the Rouse case. I say because I am prepared actually here to climb the hill that says this issue is not waived. And it's not waived because as Rouse said that a sentence is reasonable if it is imposed under fair procedures. And I will be arguing here that it's not a fair procedure for the court to make certain commitments that it would not double count conduct that he was sending the defendant across the street to plead to in superior court, knowing that this plea agreement talked about a sentencing range. The defendant understood that to be a number. And then the court does a workaround of that number to give it a much greater number. I'm sorry. The appeal waiver says you may appeal if the sentence exceeds the guidelines range determined by the court. The guidelines range determined by the court had an upper bound of 108 months. So it did not exceed the guideline range determined by the court. I would argue that to look simply at the plea agreement here for the commitment in the waiver is unfair because there is a significantly muddy record here that follows, both at the plea agreement and at the status hearing where this issue was discussed at length. And I think that the record significantly muddies the waiver with respect to the plea agreement. Also at the plea, he was assured at the very start that his plea would be reasonable, which of course it must be because that's our law. And the sentence would have no fairness or integrity if it were not reasonable. What's reasonable here, given the entire record and every promise this judge made, was that he would not be punished twice for the same conduct. And when they kept repeating 108, 108, the defendant understood that his range was 108, not 108 with a workaround that would give him double time for conduct that he went and was sentenced for across the street and then was resentenced for here because it was counted in his guideline range. I would remind the court, too, that it was not part of the charged crime that he pled guilty to. It can't be a coincidence that he pled guilty to a crime that was committed on April 30th and the conspiracy he pled guilty to here commenced the very day after. There are two separate crimes. It sounds like an argument against the enhancement, which the counsel clearly did not make or has not been made on appeal and agreed to in the plea agreement. Well, because he had these commitments that one way or another it would be addressed and it wouldn't be sentenced twice. I noticed the government in its brief even backs out that time and recalculates it without the enhancement and even there the defendant is given a sentence of three months less, which if no more he would certainly accept. But because he was assured, counsel was assured, that the court understood and the court said I will give it consideration, not I will consider it. There's a difference between saying I'll consider it, I'll think about it, and I will give it consideration, which means I will take that time and consider that it has been accounted for when you come back to me with a sentence that's been imposed in the superior court. That means that he will not be sentenced twice. So I think counsel was led to believe he didn't have to make that argument because it was understood that one way or another he would only sentence once for that conduct, not twice. And I think I've spoken over my time. So I will look for some of those other references too if I may rise with them in rebuttal. I'll be addressing two sentencing issues on behalf of Appellant Matthews. The first issue was whether it was error to enhance the offense level based on the prior conviction and of course the requirement that the crime of violence, the underlying conviction or the prior conviction in that case was an attempted assault with a dangerous weapon. The second issue is was it plain error for the court to sentence Appellant Matthews above the guidelines when the factors the court addressed as its reasons were essentially issues considered by the guidelines and the courts made no particularized findings, either orally or more significantly written findings to state its reasons for the departure. The first issue was review of De Novo and the issue of whether or not it was a prior crime of violence. The court did not specify whether it was going under the first section of the statute which talks about the elements or the categorical or the second which is the enumerated. Why is it De Novo? Why isn't it plain error? Why is it De Novo? Because questions of this type are De Novo. Was there an objection? There was. There was an objection. There was. And that's a good question in the sense because I think we have to look at the way this case proceeded in sentencing. The pre-sentence report originally came out and said the defendant's a base offense level 14 but may change if this DC case is a crime of violence. In response to that, the prosecution provided, frankly what I think shouldn't have been provided, they provided the fact of the case of Simmond Lee and Gerstein which established that there was a gun discharged and then showed up at sentencing and said of course it's a crime of violence because there was a gun discharged and went over the circumstances of how that gun was discharged. But what we know is under an element approach or a categorical approach, the court is not to consider the underlying facts of the case. The court is to consider the elements of the offense at issue. And once the pre-sentence report writer changed his or her version and said it's a crime of violence based on those facts, the court had some questions. The prosecutor made those same arguments at sentencing that it was clearly a crime of violence because a gun was discharged and the court adopted those findings over the defense objection that you have to use a categorical approach. You have to consider the elements. And significantly here, I would suggest ADW, assault with a dangerous weapon in D.C. is not necessarily a crime of violence because there's alternative matters in which it could be committed. But more significantly and more egregiously in this case is that this was not even an assault with a dangerous weapon. This was an attempt. Elements of force or violence required on an attempt for a dangerous weapon. And for that reason... Doesn't the guideline application note say that attempts still qualify? I think there's some confusion about that because those, I believe, are attempts under the federal statute. And the federal statute is different than the D.C. attempt statute. But more significantly, I don't think that alleviates the need to examine the statute or the crime at issue. And here, I don't think there's any argument, and I don't think the government makes an argument even, that you can commit an attempt at ADW without using force or violence. And it's really a legal question. We don't look at the underlying facts of the case. And I will be the first to concede, if we are to look at the underlying facts of the case or the proffer and credit that proffer, there was arguably a crime of violence if the gun was discharged. Though even there, it went forward as an attempt, assault, intent to frighten. The intended victim was nowhere in the zone of danger and could have been hit. So it was clearly preceded as an intent to frighten. But more significantly, to have an attempt, you need only the intent to commit the crime and some act reasonably calculated to bring it forward. You certainly don't need force. You certainly don't need violence. And for that reason... Because the attempt here is not just to commit assault. It's to commit assault with a deadly weapon. So to distinguish between attempted simple assault and attempted assault with a deadly weapon, what role does... To establish that type of attempt, what do you have to show about the presence or involvement of a deadly weapon? Well... To be honest, I'm trying to capture that, but it's got to be different than a simple assault attempt, right? I'm sorry? It's got to be different than a simple assault attempt, and so... No, it has to be an attempt. It has to be an assault in which there's a potential for a deadly force. But it does not need to be a dangerous weapon in the sense of it has to be a gun or a knife. In D.C., assault with a dangerous weapon could be anything. It could be a bottle of brick. I've seen ADW shots... What if the attempt stage, how is that... I'm just trying to get my head around... Just sort of look at the list of elements. I don't know how you would distinguish a simple assault attempt from an assault with a deadly weapon attempt. And so I'm trying to figure out how that weapon factors in and whether that makes this type of attempt different than a simple assault attempt for purposes of crime or violence. It will matter because an ADW in D.C. could be committed with any object. Any object that could inflict an injury, including that picture. I would say that distinguishes it. But more significantly is... Well, do you have to show... That's what I'm asking you. Do you have to show that a picture was... Right, and you don't have to show... For an attempt, you don't have to show that there was any force or violence used. And that's really the distinguishing part. Do you have to show the presence of a deadly weapon? No. I wouldn't think so, no. It says intent, along with any act reasonably calculated to further the... I'm trying to find the exact language for the sentence. The critical point, and I can't find the exact language, I know it's in the brief of what an attempt is. Reasonably adapted to accomplishing the crime. Right. If the crime has to involve a weapon, does the weapon have to be... I would think not. I don't think it has to specifically be a weapon. But more significantly, it doesn't have to have any elements of force or violence. If I intend to commit an assault and move towards the location where I anticipate the victim is, that's enough for an attempt. There is no force involved. There's no violence involved. The victim was never a danger. But that's enough for an attempt. How does that fit within the guideline commentary of offense of attempting to commit such offense? So if you have the offense, if we assume for the moment that the completed offense is a crime of violence, all you have to do is attempt to commit it. We don't have to further define anything about attempt. The guideline already defines it for us. I think there's a two-fold problem with that. The first is that ADW in D.C. can occur without any violence, threats, or force. That's a different question. That's not about what an attempt is. It can be decided categorically. If we decide that ADW is a crime of violence, then the guideline suggests an attempt at ADW is a crime. It doesn't suggest, says, that an attempt at ADW is also a crime of violence. I would say you have to look at the D.C. attempt statute. I know you would say that, but the question is where you get that out of the guideline. Because you have to look at what the violation is. The violation here does not include any violence. Then you have to succeed on the principal offense claim. I don't see how you succeed by attacking the attempt part of it. I think it could be either, in all candor. I think because ADW can occur without force or violence, and trial courts in this building have ruled that ADW does not necessarily apply in the active context as a crime of violence. Trial courts in the building are precedent. We have our own precedent. Understood. I don't think there's any precedent here that attempted ADW is a crime of violence or can be a crime of violence under the attempt statute and under the attempted AD statute as it exists in D.C., which I think the confusion here is because the federal attempt statute is very different. The federal attempt statute is analogous to conspiracy. It provides the same punishment for an attempt. The guideline recognizes that we could be talking about state as well as federal crimes. Right. I agree. So the guideline is not differentiating between federal crimes and state crimes. No, I agree. But you have to look at the state crime. In this instance, when you examine the state crime of ADW, and more specifically the state crime or the D.C. crime of attempted ADW, there is not an element of force in it. Therefore, it cannot be correctly categorized as a crime of violence. On the ADW, the government quotes the Spencer case. The Spencer case says that an element of the offense is the use of a dangerous weapon in committing the assault. Right. It's interesting because there is no statute for ADW in D.C., and the Spencer case applies or creates the elements. The statute in D.C. is if there is an assault and that assault includes use of a dangerous weapon or deadly weapon, then it becomes a felony rather than a simple assault. And I've read – and the Spencer decision does attempt to articulate elements that apply to that. But the last part is even under the Spencer analysis, it does not require force or violence, which means you can't enhance under the guideline absent force or violence being an element of the offense. But it requires the use of a dangerous weapon, right? That's what Spencer says. Spencer says ADW requires use of a dangerous weapon. Right, but I think dangerous weapon in the context of ADW is – what's the word I'm looking for – almost amorphous. Because it can be anything. So in rhetoric, we said with respect to the Maryland Court of Appeals operating in just exactly the same way, analyzing the common law in Maryland, that the use of a deadly or dangerous weapon constitutes a crime of violence. How do you distinguish rhetoric? Because there was no use. You do not have to have use in the context of the weapons used. In rhetoric, you're right. You have to show that the weapon was used. And rhetoric references Parnell, which is the Massachusetts case. I don't understand how you're distinguishing this case from rhetoric in light of what Spencer said. Because under the attempted ADW statute… Leave aside attempted, okay? Leave it under the ADW. You do not have to have – in DC, you do not have to have use of the weapons. So you just think that the Court of Appeals of the District of Columbia is wrong with respect to Spencer? I think it's being pulled out of context there. Well, it may be, but it is the highest court of the District of Columbia. And so we're – just as in rhetoric, we read the highest court of the – in fact, the less than highest court in Maryland as being decisive. Why don't we have to read the highest court of DC as being decisive on this question? It's an interesting academic question, but I think we're still stuck with – and regardless of how it gets resolved, and I think ADW in DC does stand by it – does not require actual use of force. This could be a threat. It could be reckless. It could be all sorts of other things. But more significantly, what pulls us out of there is that this was an attempt, and it included act of force or violence. Do you have an argument about adequate explanation of a guideline sentence? I'm sorry, are you moving – Didn't you have another argument? Yes, yes. Thank you. That brings us to the plenary standard on – or something above the guideline range here. And that – this case is controlled, I would suggest, by a Kibe or a Kigbe. It's virtually the exact same situation. In the Kigbe, there was a doctor who engaged in some kind of health care fraud. The court opined how bad health care fraud was, and because of that, sentenced above the guidelines, but did not specifically state how, in the context, a Kigbe's conduct was different from somebody else accused and convicted of the same offense. And in this case, the same error occurred in the trial court, when the trial court relied on, essentially, guideline factors to impose a sentence above the guidelines, when both the factors the court articulated were the basis for other enhancements. In particular, the court talked about the number of guns and the level of violence, but the court had already given an enhancement based on the number of guns. That sounds like the standard for a departure from the guidelines, not the standard for a variance under the advisory guidelines, as the Supreme Court has articulated. Well, clearly – I mean, if you do not have to show what you just articulated, I don't believe to show a variance. The whole point of the guidelines, after Booker, is they're advisory. Advisory means advisory. And some judges go low and some judges go high. And as long as they explain their reasons, our case law suggests that we're not – and more importantly, the Supreme Court's Gall-Rita-Kimbrough case law suggests we're not supposed to second-guess that, as long as there's some explanation of what the judge is doing. And the judge here talks about a lot of different things – protect the community, deter others, children are involved, promote respect for the law. But aren't those all factors contained within the guidelines? And weren't those addressed by the guidelines? But that would mean – that would mean in the variances, a judge who just thinks that the guidelines do not adequately punish certain kinds of crimes could never vary above the guidelines. And that is not the law, as the Supreme Court – the whole point of Booker is that the guidelines are advisory. And some judges are going to say, I look at that advice, advisory, and I disagree with it. And I think a higher sentence is appropriate to get into these facts. And many judges, as you're well aware, will say, actually, I think a lower sentence is appropriate here. I mean, there are more downward variances than upward variances by a long shot. I just don't know how we can second-guess it as long as the judge goes through the facts of the case and gives the individualized consideration here. And respectfully, I think the answer to your question is contained within the feedback. It's a procedural error because the judge didn't do exactly what you described. He didn't depart upwards. Why this defendant deserves an upward departure above – It's a variance. You mean variance. Could the judge have done it here? Could the judge have done it? In other words, is this really a substantive or procedural? So you're saying procedural is just failure to explain. So the judge could have done it. I think it would have to be remanded  And what could the judge have said? Well, if the judge has a basis to depart upwards that isn't considered by the guidelines that isn't incorporated, then by all means, he has the discretion to do that. But to do that under a feedback, he needs to state with specificity, including in writing, why he's departing upwards. And that wasn't done in this case. It was exactly what was done in a feedback. There was generic comments about guns, violence in the community, need to send a message – not need to send a message, need to deter, need to punish, different variety, issues and sentences. What if the judge just disagrees with the guideline as being insufficiently severe? The Supreme Court has already decided that's okay. So this is a trick question for you. The answer is, if the judge says, I disagree with the guidelines because they're not severe enough or too severe, then the judge can vary. But the judge didn't say that in this case, did he? No, and the judge seems to have departed upward and said the guidelines weren't sufficient, given the conduct. And it seems to be within the context, seems to have mirrored the actions in the F. Pigbay case, which this court reversed, saying you have to state the reasons for the – it's a procedural error not to state the reasons to depart upwards. And I respectfully submit that's binding on this court as well. The same error complained of in F. Pigbay is present in this case, and the same result should be that the case should be remanded to the court of appeals. Now, does he have discretion to do that? Of course he does. Of course he does. Of course he does. In the facts of this case, the judge can impose a higher-than-guidelines sentence, you agree? Absolutely. He just has to state with specificity his reasons for doing so and why, in particular, this defendant should be taken out of the guideline. When you say judges have discretion to do that, are you talking generically or are you saying this guy – does your client deserve that higher sentence? Obviously, I'm not saying my client deserves the higher sentence. Are you saying the facts of this record would support a higher sentence if the judge had just said the right words, or are you saying – Yes. Yes. If the court had made the correct findings, then of course – Would a court make the correct findings on this record? That's what I'm asking you. Does this record support that higher sentence for your client? He would have to state a reason, but yes, assuming he has a legitimate reason to go above a guideline, then of course – Do you think there are legitimate reasons? Does this record establish legitimate reasons? Is this just a process problem? It is a procedural problem. You don't think there's any substantive problems? I would have to say what the basis was and then I would be in a position to challenge it. But if he says, this is the reason why – You can't tell from looking at this record on your own right now whether your client – I'm not going to tell if my client is or did not have reasons to take him outside of the sentencing guidelines. That's really a decision for the judge to make. Just to be clear, and I must say I took it the same way Judge Kavanaugh took your first answer. Were we to say there's a procedural error here and therefore it has to be remanded, is your position that the court will then give a reason that is substantially okay and procedurally okay and you'll lose in any event? Or is your – which is the way I took your first answer or is your answer is we'll have to see what reason is given and then we'll challenge it which is the way I took your answer to Judge Millett. Which position are you taking here? In a way, both because I don't think they're inconsistent. I think does the court have discretion? If the cases are remanded, does the court have discretion to make findings that warrant an upward departure? Certainly. And is there a basis for anything that takes this individual defendant's actions outside? So when you say it's a little bit of both, maybe the answer you're giving is well, we don't know what the judge would do if he knew that he had to give an explanation. I don't know that the judge fully appreciated that he had to find a reason to depart outside of the reasons he articulated which are all reasons. He doesn't have to do that. That's not the law. The law is its advisory. Right. He has a lot of reasons. He's lived through the whole trial. He has a lot of reasons that he was concerned about the activity in this case, taking over apartments. You know, what that had caused the community and young folks in the neighborhood. I don't know. I mean, this is just Booker. You know, we go back to Booker and revisit that which a lot of people want to do, it seems like, and we can do that. But it's their advisory, their advisory, and you just have to explain why you think this sentence is justified and it's not science. You know better than... I'm not disagreeing that he has the discretion to depart upwards. He just has to make the findings. He has to comply with the procedural safeguards so that this court can find out and review and determine whether or not... But the point of the procedural safeguards is so that we can determine whether it's substantively unreasonable. Right. And we make crystal clear in our case law that substantive reasonableness review is extraordinarily deferential because the whole point, post-Booker, is that as long as you're within the statutory range, it's going to be, we've said, the rare case where you can find a sentence that's either substantively unreasonably low or high. We've had cases with government appeals from low sentences and we've rejected those. We've had cases with defendant appeals from high sentences and we've rejected those as being substantively... I don't suggest for a moment that the judge could not articulate a basis that would warrant an upward departure. What I'm suggesting is that it's procedural error for him to have ruled the way he did and not complied with that. So that reason has to be remanded. And then, if there's an objection to be made, if he seeks to depart upwards on reconsideration, he has to comply with the statute. He has to... The point... And I admit it's a deferential review. Right, I understand. I mean, the point of your argument is that it's very hard for a district judge to vary upwards and that makes the guideline upper bound, have talismanic significance, which is what the Supreme Court exactly said created the Sixth Amendment problem that they eliminated in Booker. Of course, eight of the nine justices actually thought the guidelines range should still have significance, but the way the weird lineup worked, the one justice decided it and the guidelines became advisory. I think I not necessarily agree with the first premise in your question, which is that it's incredibly hard or unreasonably hard for a judge upwards. I think there are clearly basis for a judge to depart upwards. They just have to make the findings that warrant it and that's what wasn't done in this case. Are you aware... Go ahead. Are you aware of any case where we have held that a court can vary and for the variance go outside the guidelines range based on acquitted conduct? I'm certainly aware of cases where judges have considered  that was acquitted. I'm asking you about whether variance outside the guidelines range of your... Not outside the... What you've got here. I've seen cases where judges have based on relevant conduct, considered acquitted conduct as relevant conduct and departed significantly upwards. Yes. I'm talking about variance outside the guidelines range. I'm not sure where the line gets drawn between the variance and an upward departure. I have seen it done and I don't know whether that was categorized as a variance or an upward departure based on relevant conduct but I'm painfully aware of it having been done in some of my cases. Can I just say, I just want to be sure I understand your argument. Your argument is based on a key bay which was decided after Booker, after Gall, after Kimbrough and that case held that the court has to say why it has to give reasons that would not apply equally to any defendant convicting the offense and instead provide individualized reasons. And in that case we remanded because the district court suggested that, did not suggest that it believed the guidelines range for healthcare fraud was too low even in the mine run of cases. In the what? In the mine run that is in the typical case. That's right. So that, your position is that notwithstanding Booker, notwithstanding Gall, notwithstanding Kimbrough, this court has said that you can't vary upwards without giving a reason different from the mine run of cases considered by the guidelines. Unless you just state I don't think the guidelines are good enough. Which is what the Supreme Court held in this year's case. I think if the court had made that... We may be wrong in that position but it is the position of this court. And not to be redundant but my position is that based on a kick-bay the court needs to particularize its findings as to why it is reporting out. Which phrased another way as it was phrased in a kick-bay was what takes this particular defendant out of the run-of-mill average defendant in the same situation for the same conduct. Why should this person be sent to our hospital? Does every case for the crime of which your client was convicted involve young folks in the neighborhood? I wouldn't know. I wouldn't know unless the court says that's the reason for the part. And that's one of the reasons. That is one of the reasons. Does every case involve a lot of weapons? And there was a departure based on that. I'm sorry. Not a departure. There was an enhancement based on the number of weapons. There was an enhancement based on... I forget what the enhancement was. Based on use of the weapons in connection with a felony. Exactly. With a felony was never stated. But assumably it was drugs. And interestingly he was acquitted of all the drug conduct. Much of it by... Much of it by the court. But nonetheless apparently the court departed upwards or... Yeah. Gave an... Not departed upwards. Gave an enhancement based on the gun being used in connection with... And exactly the reason the court stated. There was... He refers to a lot of weapons and related acts of violence. Not every case for these crimes or these enhancements would involve that. He also refers to young folks in the neighborhood. Not every case would involve that. Well... Also obviously this case involved taking over apartments and running drug operations and terrorizing the neighborhood with taking over apartments. Not every case involves that. Terrorizing might be too strong in your characterization but that's one characterization. Well interestingly those were all allegations the government made and several of them were rejected by the court and the remainder were rejected by the jury. I understand and that's a good point on the acquitted conduct and I've written about that and I'm sympathetic to that but the judge at sentencing can take into account of course all the relevant conduct that the judge believes occurred in justifying the sentence for the count of conviction. And if the judge said even though there had been an acquittal I am going to consider these acquittals as relevant conduct and based on that I am going to depart upwards that would be within the discretion of the judge but that's not what he said and interestingly the things he did say are I would argue I mean you ask the question do all these cases involve neighborhoods where there are kids well I don't know if that's an element or a question of evidence in each case but I think it's safe to assume that most drug activity occurs in communities and in every community there's kids. But that's not considered by the guidelines so that isn't that is a factor that's not considered by the guidelines there's no affects kids adjustments in the guidelines like there is for in this particular guideline for guns and for other crimes associated with guns. So I would guess as an academic matter if the judge wanted to make that finding and put it in writing and say I'm departing upwards because of this that may be within his discretion that may be an aggravating factor. That isn't when we look at his when we look at the the sentencing there's nothing written down there's a couple of thoughts that's checked off. I thought there had been an enhancement at one point a proposed enhancement for involvement of children that the district court rejected. Am I correct about that? I do not recall that off the top of my head. I don't know if anybody requested an enhancement. I think there is I know another guideline that there is an enhancement involved with children but I don't know if there was a request for that in the case. I can't say. I know your client obviously was upset at sentencing and I read that and I understand why because the counter conviction and then you get to the high sentence. I understand that. I understand the concern from your perspective but I'm also thinking about what our role is so that's the nature of my question. I understand and I appreciate that and I'm not saying well I'm being redundant   discretion to depart upwards. They just have to follow the appropriate procedure. What unsettles me is that I don't know if there was a request for an enhancement involved with children but I know they said that you could consider acquitted conduct in deciding on your sentence. Well it's an interesting question. Yes, obviously you can consider acquitted conduct. It's not that interesting in the circuit because we've decided No. It is interesting but It presents an interesting framework in this case when much of the acquitted conduct was based on a judge granting a motion for judgment of acquittal. So how do you make a finding that well the judge I mean obviously the basis for the theory about considering acquitted conduct is different standards of review, right? And for judgment of acquittal there's no reasonable theory to find beyond reasonable doubt and for sentencing it's preponderance. Right. And so I guess the question becomes an interesting academic question. Can you find by preponderance of the evidence that the client should be held accountable for relevant conduct when you found that based on the evidence of the white most favorable to the government there isn't enough there to go to the jury? And I thought we settled that in case appropriately and I don't settle this. I'll have to go back and look at that.      No further questions. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Good morning. May it please the Court. James Ewing for the United States. None of the Appellant's claims warrant reversal or remand from this Court. I plan to cover the matters raised this morning by Appellants Adana, Matthews, and Brown in that order and I'll rest on my briefest to Appellant Boston unless the Court has questions on Appellant Boston. Turning to Appellant Adana first, Appellant Adana waived his current claim as part of his plea agreement. What about the Judge's statement that you'll be able to appeal for reasonableness? Right, Your Honor. You're speaking to Supplemental 10X pages 56H. What the District Court said was now with regard to certain circumstances you may even have an opportunity the right to appeal the sentence on the grounds of reasonableness. So in context, Your Honor, that it was clear to the parties what that meant. Those certain circumstances were if the case is clear to the defendant is what matters. And the District Court's obligation to make it clear directly to the defendant, that's the whole point of this colloquy. So where can you point me in the colloquy that made it clear to the defendant that appeals could not be taken on grounds of unreasonableness more broadly? Supplement appendix pages 56 J and K. Adana's own counsel, Mr. Abinanti, said, I think the District Court covered this a few minutes ago with you, but he understands that he has the ability to appeal if you go above guidelines. No, that doesn't mean that's the only time he can appeal. If he's just been told by the District Court judge I can appeal on reasonableness and unreasonableness. By the way, here's one instance where you get to appeal. He didn't say the only time he got to appeal and that wouldn't be the only time he got to appeal. I agree that there are other reasons that a sentence could be unreasonable other than if it's outside the guideline range, for example. If you read that in context, again, moving to the same colloquy, supplemental appendix pages J and K, Adana agreed with his counsel's characterization. Tell me where that is. The part of the case is that the court would probably depart upward and state the reasons for that. I've explained to Mr. Adana that under the plea agreement he retains the right to appeal that decision. That is the way that you can appeal the sentence. Where else in the plea is it made clear to him that he is restricted in this way? In the plea colloquy, it's really as the court talked about in the Kaufman case, there was a situation where the district court said you may be able to appeal the sentence if you don't like it. The prosecutor cleaned that up. Our submission to the court is in this case, four pages later, the defense attorney cleaned it up. And then Adonna agreed that, and that was supplemental appendix pages, excuse me, page 56J, which is the part where Mr. Avenatti said, I believe you just covered it with him, those are the certain circumstances that the district court was discussing. In the context of this case, he's likely going to go above guidelines. Interestingly, in Adonna's reply brief, he doesn't even come back and point to this language by the district court. He just says, well, this was in essence an above guideline sentence, so therefore the clause in joint appendix 108 in the written plea is raised, and I can appeal it because it's an above guideline sentence. He doesn't even point to this language by the district court, and our submission would be, that's because everyone knew what the district court meant by that. Everyone knew that the district court     court. So, I think that's the reason why we're concerned about this. Given how plain the mischaracterization of the inadequate characterization of the appellate waiver was during this plea policy. Supplementary appendix  J&K, Adana agreed personally to his defense counsel's representation of the facts of the case, excuse me, of the plea agreement. So, that's him affirming, hey, I understand this. I personally understand it. It's not just my defense counsel saying that this is how I'm going to be able to appeal. So, that's our submission. We think in context . In the sense that the lawyer said he can appeal if the district court goes as outside line. I just have it as supplementary appendix page 56 J&K. I don't have the supplementary appendix with me, but it was along the lines of do you agree with your defense counsel's presentation of the plea agreement in Adana 50? That's what I was pointing to. It doesn't specifically talk about that plea agreement. If I may turn to the merits . I have this recently in another case. You all would be well advised to be on alert to make sure everything is completely clear. It's just coming up too often. I'm sure you're doing that. I would reinforce that these kinds of things can be avoided very easily. More than training. This should not happen. I realize there are lots of people involved, but it can be easily prevented by you too. I'm not meaning to be scolding or anything. I'm just saying we can avoid this     and we should be on alert to  sure that everything is completely clear. We should be on alert to make sure that everything is completely clear. We should be on alert to make  that clear. We  be on alert to We should be on           should be on alert is completely clear. We  be on sure that everything is  clear. We should be
judges: Garland, Kavanaugh, Millett